IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CELLCO PARTNERSHIP d/b/a** : | CIVIL ACTION NO. 4:20-CV-2438 |
| **VERIZON WIRELESS,** : | |
| : | **(Judge Conner)** |
| **Plaintiff** : | |
| : | |
| v. : | |
| : | |
| **THE WHITE DEER TOWNSHIP** : | |
| **ZONING HEARING BOARD** : | |
| : | |
| **Defendant** : | |

## MEMORANDUM

Plaintiff Cellco Partnership doing business as Verizon Wireless ("Verizon") brings this action against defendant the White Deer Township Zoning Hearing Board ("Zoning Board") under the Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7)(B)(v). Verizon and Zoning Board both move for summary judgment pursuant to Federal Rule of Civil Procedure 56.

**I.      Factual Background & Procedural History**[1]

Verizon is a cell phone service provider licensed by the Federal Communications Commission ("FCC").  (See Doc. 25-1 ¶¶ 2-4).  Verizon has

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (See Docs. 25-1, 29-2, 30-1, 32). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

identified a four-mile area along Interstate 80 ("I-80") in the northern portion of Union County, Pennsylvania, where its wireless service is lacking. (See Doc. 25-20 at 3-4). Within the four-mile area, Verizon subscribers are likely to suffer from dropped calls, garbled audio, a lack of data connectivity, and—in case of an emergency—difficulty contacting 911. (See Doc. 25-20 at 1; Doc. 25-27, Zoning Hearing Bd. Tr. 97:8-98:23 ("ZHB Tr.")). Verizon seeks to construct a cell phone tower in the northwestern corner of White Deer Township to alleviate this service gap. (See Doc. 25-1 at 6; Doc. 25-20 at 3-4; see also Doc. 25-5).

The northwestern corner of White Deer Township along I-80 is a sparsely populated area where the vast majority of land is controlled by the Pennsylvania Department of Conservation and Natural Resources ("DCNR"). (See Doc. 25-1 ¶¶ 26-27, 33; Doc. 30-1 ¶ 26; see also ZHB Tr. 58:21-23). DCNR has a longstanding moratorium on leasing land for construction of cell phone towers. (See Doc. 25-1 ¶¶ 28-29; Docs. 25-11, 25-12; see also ZHB Tr. 58:17-60:10, 65:14-21, 76:11-82:4, 88:7-91:1). Consequently, the number of available locations for building a tower capable of alleviating the gap, at least on private land, are very limited. (See ZHB Tr. 58:17-23, 81:1-11). After conducting an examination of the area, Verizon determined there is precisely one suitable location—a small parcel along White Deer Pike owned by

Willard E. Simpler, III, and Nancy S. Messimer.[2]  (See Doc. 25-1 ¶¶ 28-29; ZHB Tr. 56:12-83:2, 88:7-91:1; Doc. 25-20 at 5).

Verizon subsequently negotiated a lease agreement with Simpler and Messimer.  (See Doc. 25-1 ¶ 7).  The lease agreement grants Verizon the right to build a tower on a 65' by 40' (0.0597 acre) subsection of the parcel.  (See id.)  Verizon seeks to use the subsection to construct a 195-foot monopole cell phone tower capped by a four-foot lightning rod.  (See Doc. 25-1 ¶ 9; Doc. 29-2 ¶ 15).

White Deer Township has enacted a zoning ordinance in accordance with Pennsylvania's municipal planning code.  (See Doc. 25-1 ¶ 8; Doc. 29-2 ¶¶ 3, 8, 10-14).  The subject parcel is zoned "Woodland," one of several zoning districts in White Deer Township.  (See Doc. 25-1 ¶ 24).  Cell phone towers are permissible structures within Woodland districts provided the tower meets certain requirements.  (See id. ¶ 25).  Most relevant to the controversy *sub judice*, the ordinance sets a minimum lot size of one acre and a minimum setback requirement of the tower's height plus ten percent.  (See Doc. 25-28 at 4).

Verizon applied to Zoning Board on August 18, 2020, seeking variances necessary to allow construction of the tower on the leased portion of the parcel.  (See Doc. 29-2 ¶ 17; Doc. 32 ¶ 17).  Zoning Board held a hearing on Verizon's

---

[2] Verizon refers to the property at issue as being located at 9880 White Deer Pike, New Columbia, Pennsylvania.  (See Doc. 25-1 ¶ 7; Doc. 25-2 at 1).  Zoning Board, on the other hand, identifies the property as being located at 8779 White Deer Pike.  (See Doc. 29-2 ¶ 7; Doc. 29-1 at 1).  Neither party ever asserts or implies there is a dispute over which property is at issue.  (See Doc. 25-1 ¶ 7; Doc. 30-1 ¶ 7; Doc. 29-2 ¶ 7; Doc. 32 ¶ 7).  Accordingly, we assume the difference in address is inconsequential clerical confusion.

application on October 14, 2020. (See Doc. 25-1 ¶ 11). In support of the application, Verizon provided copious documentation establishing the tower's necessity and compliance with various regulatory and permitting criteria. (See id. ¶ 12). Verizon also presented testimony from four witnesses, including Andrew Petersohn, a radio frequency design expert, and Matthew Burtner, a siting consultant. (See id. ¶ 13; see also Doc. 25-20 at 10). Additionally, Verizon asserted that to deny the requested variances would constitute a violation of the Telecommunications Act of 1996. (See Doc. 25-1 ¶ 10).

Zoning Board denied Verizon's application orally at the conclusion of the hearing. (See id. ¶ 15). Zoning Board then issued a written decision articulating its findings of fact, conclusions of law, and rationale for denying the variances. (See Doc. 25-28). The written opinion describes Verizon as having presented a large volume of "factual information" showing "compliance with virtually all criteria required for permitting the proposed use." (See id. at 4). It also acknowledges Verizon had shown ample evidence for finding the existence of a significant gap in service. (See id.) Nevertheless, Zoning Board found that Verizon had not met the statutory requirements for granting a variance under the Commonwealth's Municipal Planning Code, namely, that Verizon had not shown that compliance with the lot-size and setback minimums prevented "any possibility of development in strict conformity to the Ordinance." (See id. at 4-9). The opinion also expresses concern over the danger posed to public safety should the tower suffer a structural failure. (See id. at 5-9).

Following denial of the variance application, Verizon filed the pending lawsuit alleging Zoning Board's denial violates the Telecommunications Act and requesting the court reverse the denial. The parties have filed cross-motions for summary judgment on all counts of Verizon's complaint. The motions are fully briefed and ready for disposition.

## II. Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the nonmoving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court is to view the evidence "in the light most favorable to the non[]moving party and draw all reasonable inferences in that party's favor." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the nonmoving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

Courts may resolve cross-motions for summary judgment concurrently. See Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008); see also Johnson v. FedEx, 996 F. Supp. 2d 302, 312 (M.D. Pa. 2014); 10A CHARLES ALAN WRIGHT ET

AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 2015).  When doing so, the court is bound to view the evidence in the light most favorable to the nonmoving party with respect to each motion.  See FED. R. CIV. P. 56; Lawrence, 527 F.3d at 310 (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)).

### III.   Discussion

Congress enacted the Telecommunications Act to facilitate expansion of cell phone service across the United States and encourage competition between cell phone service providers.  See Verizon Commc'ns, Inc. v. F.C.C., 535 U.S. 467, 491-92 (2002); APT Pittsburgh Ltd. P'ship v. Penn Township Butler County, 196 F.3d 469, 473 (3d Cir. 1999); Ogden Fire Co. No. 1 v. Upper Chichester Township, 504 F.3d 370, 377-78 (3d Cir. 2007).  To achieve this purpose, the Act, *inter alia*, places certain limitations on the traditional power of state and local authorities to regulate the placement of "personal wireless service facilities," *i.e.*, cell phone towers.  See APT Pittsburgh, 196 F.3d at 473, 476-78; see also 47 U.S.C. § 332(c)(7).  Specifically, the Act forbids state and local governments from regulating "the placement, construction, and modification of personal wireless service facilities" so as to "prohibit or have the effect of prohibiting the provision of personal wireless services."  See 47 U.S.C. § 332(c)(7)(B)(i)(II).  The Act also requires that any decision denying a request to "place, construct, or modify personal wireless service facilities" be in writing and "supported by substantial evidence contained in a written record."  See id. § 332(c)(7)(B)(iii).  The Act empowers any person adversely affected by action (or inaction) inconsistent with these limitations to bring suit in any court of competent jurisdiction.  See id. § 332(c)(7)(B)(v).  We review whether

the state or local regulation violates the Act *de novo*.  See Sprint Spectrum, L.P. v. Zoning Bd. of Adjustment of Paramus N.J., 606 F. App'x 669, 671 (3d Cir. 2015) (nonprecedential) (citing APT Pittsburgh, 196 F.3d at 475).

    Verizon argues that Zoning Board's denial violates the Telecommunications Act because the denial of the requested variances has the effect of prohibiting the provision of personal wireless services in the four-mile area along the I-80 corridor.[3] (See Doc. 25-2 at 4-24).  The standard for an "effect-of-prohibiting claim" is currently unsettled in our circuit.  Our court of appeals previously held that to succeed on an effect-of-prohibiting claim, Verizon must show its proposed tower (1) fills a "significant gap" in service and (2) does so in a manner that is "least intrusive" on the values Zoning Board's denial sought to serve.  See Sprint Spectrum, 606 F. App'x at 671 (citing APT Pittsburgh, 196 F.3d at 480).  However, the Telecommunications Act also empowers the FCC to institute binding regulations implementing the Act.  See MCI Telecomm. Corp. v. Bell Atl. Pa., 271 F.3d 491, 516 (3d Cir. 2001).  In 2018, the FCC promulgated a new test for determining when state or local government regulation effectively prohibits the provision of personal wireless service, see In the Matter of Accelerating Wireless

---

[3] Verizon also argues Zoning Board's decision violates Section 332(c)(7)(B)(iii) of the Act because it is unsupported by substantial evidence.  (See Doc. 25-2 at 24-28 (citing, *inter alia*, 47 U.S.C. § 332(c)(7)(B)(iii))).  Because we find Zoning Board's decision has the effect of prohibiting the provision of wireless service under Section 332(c)(7)(B)(i)(II), we need not reach Verizon's claim under Section 332(c)(7)(B)(iii).  See id. § 332(c)(7)(B)(i), (iii).

Broadband Deployment by Removing Barriers to Infrastructure Inv., 33 FCC Rcd. 9088 (2018) ("2018 Declaratory Ruling").

Under the FCC's test, a state or local government prohibits the provision of personal wireless service whenever it "materially inhibits" a provider's ability to, *inter alia*, enter a new area, provide new services in an area, or improve service in an area. See id. at 9102-05. The FCC's test specifically rejects our court of appeals' two-pronged test as "unduly narrow" in the light of the current wireless marketplace. See id. at 9106-08 (rejecting, among others, APT Pittsburgh, 196 F.3d at 478-79). The FCC's test does not require wireless service providers to show a significant gap in coverage or that the challenged regulation creates a "complete" or "insurmountable" barrier to providing service. See id. at 9106-10. Even the mere imposition of a "financial burden" on the service provider, under the correct circumstances, can have the effect of prohibiting the provision of service. See id. at 9106.

Compared to our court of appeals' test, the FCC's test places a far lower burden on a provider claiming a zoning decision has the effect of prohibiting the provision of personal wireless service. Our court of appeals has yet to consider whether it will grant deference to the FCC's regulation or maintain its two-pronged test, but at least two district courts have assumed our court of appeals will defer to the new FCC regulation. See T-Mobile, Ne., LLC v. City of Wilmington, No. CV 16-1108-ER, 2020 WL 1245306, at *5 (D. Del. Mar. 16, 2020) (assuming FCC merits deference but declining to apply the test because of retroactivity concerns); New Cingular Wireless PCS LLC v. Zoning Bd. of Adjustment of N. Haledon, 469 F.

8

Supp. 3d 262, 277 (D.N.J. 2020) (same); see also Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 986 (2005). We find it unnecessary to decide whether the FCC's regulation merits deference because Zoning Board's decision to deny Verizon's variance application meets the more stringent standard set by our court of appeals. Any circumstance satisfying our court of appeals' effect-of-prohibiting test unquestionably satisfies the FCC's "materially inhibits" standard. Thus, consideration of the deference question is unnecessary.

  **A.** **Significant Gap**

Verizon asserts that a significant gap in service exists within the four-mile area along the I-80 corridor. (See Doc. 25-2 at 9-13). A "gap" exists when a user of wireless service is unable to connect with the national telephone network or "maintain a connection capable of supporting a reasonably uninterrupted communication." See Cellular Tel. Co. v. Zoning Bd. of Adjustment of Ho-Ho-Kus, 197 F.3d 64, 70 (3d Cir. 1999). When it initially established our circuit's standard for a significant gap, our court of appeals held that the perspective of the user, not the wireless service provider, is the proper measure. See APT Pittsburgh, 196 F.3d at 480. Under this holding, deemed the "one-provider rule," providers can only claim a significant gap in service exists if no other provider covers the area in question. See id.; see also Omnipoint Commc'ns Enters., L.P. v. Newtown Township, 219 F.3d 240, 244 (3d Cir. 2000); see also T-Mobile Cent., LLC v. Charter Township, 691 F.3d 794, 806 (6th Cir. 2012) (discussing development of one-provider rule across circuits).

As the case law surrounding the Telecommunications Act developed, some courts of appeals adopted the one-provider rule, see Sprint Spectrum L.P. v. Willoth, 176 F.3d 630, 640 (2d Cir. 1999); AT & T Wireless PCS, Inc. v. City Council of Va. Beach, 155 F.3d 423, 428 (4th Cir. 1998), while others rejected it, holding significant gaps could exist within a particular provider's own service, see Second Generation Props., L.P. v. Town of Pelham, 313 F.3d 620, 632-34 (1st Cir. 2002); MetroPCS, Inc. v. City & County of San Francisco, 400 F.3d 715, 733 (9th Cir. 2005), abrogated on other grounds by T-Mobile S., LLC v. City of Roswell, 574 U.S. 293 (2015). The FCC, seeking to resolve this circuit split, promulgated a declaratory ruling in 2009 repudiating the one-provider rule and holding that Section 332(c)(7)(B)(i)(II) "applies not just to the first carrier to enter into the market, but also to all subsequent entrants." See In the Matter of Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(b), 24 FCC Rcd. 13994, 14014-19 (2009) ("2009 Declaratory Ruling").

Our court of appeals has yet to formally address the FCC's repudiation, but both parties assume the one-provider rule no longer applies. (See Doc. 25-2 at 9-13; Doc. 30 at 8). The parties' position is supported by several district court decisions granting the 2009 Declaratory Ruling deference, see, e.g., Liberty Towers, LLC v. Zoning Hearing Bd. of Lower Makefield, 748 F. Supp. 2d 437, 444-45 (E.D. Pa. 2010); Sprint Spectrum L.P. v. Zoning Bd. of Adjustment of Paramus, No. CIV.A. 09-4940 JLL, 2010 WL 4868218, at *9 (D.N.J. Nov. 22, 2010), and at least one instance where our court of appeals affirmed a district court decision finding a significant gap existed in the plaintiffs' own coverage, see Sprint Spectrum, 606 F. App'x 669 at 671,

678. We therefore join the parties in assuming a significant gap can exist within a provider's own coverage.

At the zoning hearing, Verizon provided a report and testimony from Petersohn, a "radio frequency design engineer." (See Doc. 25-20; ZHB Tr. 92:21-23). In both his report and testimony, Petersohn describes the presence of a "four-mile stretch along I-80" where Verizon subscribers are likely to suffer dropped calls, garbled audio, a lack of data connectivity, and difficulty contacting emergency services. (See ZHB Tr. 97:1-99:5; see also Doc. 25-20 at 1). Petersohn's expert testimony speaks precisely to the connectivity issues necessary for showing the existence of a "significant gap" in service. See Ho-Ho-Kus, 197 F.3d at 70. Zoning Board's decision denying Verizon's variance requests even acknowledges Verizon "adequately demonstrates there is a 'gap' in wireless communication services that the proposal is designed to alleviate." (See Doc. 25-28 at 6). In response to Verizon's motion, Zoning Board does not go so far as to admit the gap exists, (see Doc. 30-1 ¶ 5), but provides no evidence or reasoning challenging the accuracy of Verizon's evidence. Accordingly, we have no difficulty finding Verizon, as a matter of law, has established the existence of a significant gap in its service along the I-80 corridor.

### B.   Least Intrusive Means

A provider does not need to eliminate every conceivable alternative to show that a proposed personal wireless service facility is the least intrusive means of addressing a significant gap in service. See APT Pittsburgh, 196 F.3d at 480. *Per contra*, the provider only needs to establish that "a good faith effort has been made

to identify and evaluate less intrusive alternatives" in terms of the values the denial sought to serve. See id. Zoning Board's written decision identifies a single value as motivating Zoning Board's decision—safety. (See Doc. 25-28 at 5-6). The decision explains that the lot-size and setback requirements exist to protect structures and individuals from injury should the tower suffer a structural failure. (See id. at 4-6). Hence, granting the variances would place the public in danger. (See id. at 5-6). At the zoning hearing, Burtner, Verizon's siting expert, testified that Verizon considered virtually every other privately held property in the area around the service gap and explained, property by property, why Verizon rejected each as a viable location for a tower. (See ZHB Tr. 56:12-83:2, 88:7-91:1). Burtner specifically testified that all the other plausible locations for the tower on privately held land would require even greater variances from the zoning ordinance's requirements than the White Deer Pike parcel. (See id. at 60:14-20).

Zoning Board questioned in its written decision whether Verizon had truly shown no alternative existed to constructing the tower on the parcel because Verizon had not challenged the legality of DCNR's moratorium, (see Doc. 25-28 at 6-9), but it does not renew that argument before this court. In fact, Zoning Board provides neither evidence nor argument suggesting another location or technological means to address the service gap. Nor does it attack the accuracy or credibility of Burtner's testimony. We conclude without hesitation that Verizon made a good faith effort to find an alternative site and established, as a matter of law, that the 195-foot monopole is the least intrusive means of addressing the service gap along the I-80 corridor. See APT Pittsburgh, 196 F.3d at 480.

### C. Fairview Township

In contesting Verizon's invocation of the Telecommunications Act, Zoning Board relies entirely on a single decision by the Pennsylvania Commonwealth Court. (See Doc. 30 at 7-12 (citing Fairview Township v. Fairview Twp. Zoning Hearing Bd., 233 A.3d 958, 969 (Pa. Commw. Ct. 2020))). In Fairview Township, the Commonwealth Court reversed the trial court's decision granting two variance applications. See Fairview Township, 233 A.3d at 960-61. Relying on the FCC's 2009 Declaratory Ruling, the trial court reasoned the Telecommunications Act mandated granting the applications because denial of either would have had the effect of prohibiting the provision of personal wireless service. See id. at 964-66. The Commonwealth Court's reversal focuses on the FCC's statements that its repudiation of the one-provider rule leaves "[s]tate and local authority to base zoning regulation on other grounds . . . intact" and that when "a *bona fide* local zoning concern, rather than the mere presence of other carriers, drives a zoning decision, it should be unaffected by our ruling today." See id. at 970-71 (quoting 2009 Declaratory Ruling at 14016). According to the Commonwealth Court, these statements indicate that as long as the zoning board grounds its decision in a "*bona fide* local zoning concern," the zoning decision does not violate the effect-of-prohibiting clause. See id. at 969-70.

At the outset, we note that this matter is not before us in diversity jurisdiction; thus, the Commonwealth Court's decision is not binding on this court. See Surrick v. Killion, 449 F.3d 520, 535 (3d Cir. 2006) (citations omitted). Nor are we persuaded by its *ratio decidendi*. The Commonwealth Court reads too much

13

substance into the FCC's boilerplate regulatory disclaimers. The Commonwealth Court holds the Telecommunications Act never obliges local zoning boards to grant variances to personal wireless service providers as long as the board provides some zoning-related reasoning justifying its decision.[4] But this cannot be so. The Commonwealth Court's statement contradicts our court of appeals, which consistently—and logically—concludes that denials of variances grounded in *bona fide* zoning concerns can violate the effect-of-prohibiting clause of the Telecommunications Act. See APT Pittsburgh, 196 F.3d at 477 (envisioning certain "individual adverse zoning decision[s]" as having "the 'effect' of violating § 332(c)(7)(B)(i)(II)"); Sprint Spectrum, 606 F. App'x at 676 (finding district court "correctly concluded that the ZBA's denial of the variance requested was an 'effective prohibition' under the [Telecommunications Act]."). The Fairview Township holding also contradicts the plain text of the 2009 Declaratory Ruling, which concludes its discussion of Section 332(c)(7)(B)(ii) with the following passage:

> [T]he *denial of an application may sometimes establish a violation of Section 332(c)(7)(B)(ii)* if it demonstrates a policy that has the effect of prohibiting the provision of personal wireless services as interpreted herein. Whether the denial of a *single application* indicates the presence of such a policy will be dependent on the facts of the particular case.

---

[4] Subsequent Commonwealth Court decisions confirm our reading of Fairview Township as effectively mandating judicial approval of these variance denials. See, e.g., SBA Towers II, LLC v. Zoning Hearing Bd. of Logan Twp., 247 A.3d 1194 (Pa. Commw. Ct. 2021); Horvath Towers V, LLC v. Indiana Twp. Bd. of Supervisors, No. 1579 C.D. 2019, 2020 WL 3068737, at *8 (Pa. Commw. Ct. June 10, 2020).

2009 Declaratory Ruling, 24 FCC Rcd. at 14019 (emphasis added). The FCC, like our court of appeals, envisions certain variance denials under certain circumstances constituting violations of Section 332(c)(7)(B)(ii) regardless of whether the denial is motivated by a *bona fide* local zoning concern. See id.

The Commonwealth Court's interpretation is further undermined by the conflict it creates with the Telecommunications Act's goal of limiting the ability of state and local governments to block expansion and improvement of wireless service. See APT Pittsburgh, 196 F.3d at 473; Ogden Fire, 504 F.3d at 378; 2009 Declaratory Ruling, 24 FCC Rcd. at 14018. The FCC's intent to curtail state and local regulatory power—not expand it as Fairview Township contends—comes across clearly in the FCC's subsequent declaratory ruling in 2018, lowering the bar for invalidating state and local regulatory actions. See 2018 Declaratory Ruling, 33 FCC Rcd. at 9102-09. The Commonwealth Court suggests that the FCC simultaneously holds any zoning board action that "materially inhibits" personal wireless service, including the mere imposition of financial burdens, as violating Section 332(c)(7)(B)(ii), see id. at 9106, but also any action that genuinely prevents the provision of service is acceptable when justified by a "bona fide zoning concern," see Fairview Township, 233 A.3d at 970-71. The Commonwealth Court's reading of the FCC's declaratory rulings simply defies common sense.

We read the FCC's 2009 Declaratory Ruling as doing only what it purports to do—resolve the circuit split by repudiating the one-provider rule—and nothing more. See 2009 Declaratory Ruling, 24 FCC Rcd. at 14016 ("We agree with the Petitioner that the fact that another carrier or carriers provide service to an area is

15

an inadequate defense under a claim that a prohibition exists."); see also Liberty Towers, 748 F. Supp. 2d at 444-45 (similarly interpreting 2009 Declaratory Ruling). The statements cited by the Commonwealth Court merely seek to cabin the FCC's repudiation of the one-provider rule to avoid any additional effect on the existing case law regarding the circumstances in which state and local regulation has the effect of prohibiting personal wireless service. For all of these reasons, we find Zoning Board's extensive citations to Fairview Township unpersuasive.

### IV. Conclusion

The undisputed facts establish that Verizon has met our court of appeals' requirements for succeeding on an effect-of-prohibiting claim under the Telecommunications Act. See APT Pittsburgh, 196 F.3d at 480. We will reverse Zoning Board's decision on Verizon's variance application and grant said application. We will grant Verizon's motion for summary judgment and deny Zoning Board's motion. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated: June 29, 2022